UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID BENRIMON FINE ART LLC,<br><br>Plaintiff,<br><br>-AGAINST-<br><br>RAPHAEL DURAZZO AND TORRELIONE SAS,<br><br>Defendants. | Case No. 1:17-cv-6382<br><br>AMENDED COMPLAINT |

Plaintiff David Benrimon Fine Art LLC ("Benrimon"), by and through its attorneys Boies Schiller Flexner LLP, for its Amended Complaint against Defendants Raphael Durazzo and Torrelione SAS (collectively, "Durazzo"), alleges as follows:

### NATURE OF THE CASE

1. Benrimon brings this action for declaratory, injunctive, and affirmative relief arising from a transaction with Durazzo involving a painting by Josef Albers, titled *Study for Homage to the Square: Soft Pulse*, dated 1962, measuring 18 inches by 18 inches (the "Work"). Benrimon cancelled the transaction because of Durazzo's failure to pay for the Work before March 1, 2017, as Durazzo had agreed. Now, Durazzo has brought a vexatious lawsuit against Benrimon in a foreign forum that has no connection to the underlying facts and with which Benrimon has no contacts. Benrimon seeks to enjoin Durazzo from proceeding in the foreign forum. The dispute should be resolved in New York.

2. Durazzo has also misrepresented his ownership of the Work to another New York art gallery in an effort to prevent Benrimon from selling the Work to that gallery. Durazzo's misrepresentation caused the gallery to decline to acquire the Work from Benrimon. Benrimon seeks damages for Durazzo's tortious interference.

1

3. On February 21, 2017, Benrimon and Durazzo reached an agreement regarding the Work. Durazzo agreed to pay $347,500 for the Work before March 1, 2017 (*i.e.,* before the 67th Street Armory ADAA Art Show commenced in New York City). In exchange, Benrimon agreed to transfer the Work to Durazzo.

4. Durazzo's agreement to make payment before the Armory Art Show commenced was a material condition of the parties' contract. Benrimon bargained for this term so that it could attempt to find another buyer for the Work at the art show if Durazzo failed to make prompt payment.

5. Durazzo failed to pay Benrimon before the Armory Art Show, in violation of the parties' agreement.

6. Durazzo wired $347,500 to Benrimon on March 8, 2017—over a week late—and demanded that Benrimon deliver the Work. Benrimon returned the money that Durazzo had transferred and refused to deliver the Work, asserting that the sale was cancelled because of Durazzo's failure to make timely payment.

7. All relevant aspects of this transaction occurred in New York. Durazzo viewed the work in New York at Benrimon's New York gallery, the parties entered into the agreement in New York, Benrimon sent the invoice to Durazzo from New York on Benrimon's New York letterhead, Durazzo agreed to wire payment to Benrimon's bank account in New York, and the Work was located in New York.

8. Durazzo has now sued Benrimon in Paris Commercial Court, seeking more than $300,000 in damages (the "Paris Action").

9. Benrimon still owns and possesses the Work. Nevertheless, when Durazzo learned that Benrimon was attempting to sell the Work to an art gallery in New York after

Durazzo breached the parties' agreement, Durazzo misrepresented to the gallery that he owns the Work. Durazzo's misrepresentation prevented Benrimon from selling the Work and caused Benrimon damages.

10. Benrimon has no contacts in Paris or France. Benrimon is a New York company. It does not have an art gallery in France, it does not own any property in France, and it is not a resident of France. Benrimon is located in New York City and *only* New York City.

11. Litigating the Paris Action would be extremely expensive, time-consuming, and inconvenient to Benrimon.

12. Benrimon seeks (1) a declaration that it did not breach its contract with Durazzo, (2) an anti-suit injunction enjoining Durazzo from litigating the Paris Action, and (3) damages resulting from Durazzo's tortious interference.

## PARTIES

13. David Benrimon Fine Art LLC is a New York limited liability company with an address at 730 Fifth Avenue, New York, New York 10019.

14. Raphael Durazzo is a citizen of France and the chairperson of Torrelione, SAS.

15. Torrelione SAS is a single-shareholder limited liability company with a registered office at 7 Rue Boileau, 75016 Paris, France.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction under CPLR 302(a) because the action concerns business transacted in this State.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because Benrimon is a citizen of a domestic state and Durazzo is a citizen of a foreign state.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District and because the Work is located in this District.

### FACTUAL ALLEGATIONS

19.     On February 21, 2017, Benrimon and Durazzo agreed that Benrimon would transfer the Work to Durazzo in exchange for Durazzo paying $347,500 to Benrimon. The parties agreed that the transaction would be cancelled if Durazzo failed to pay Benrimon before March 1, 2017, which was the start of the 67th Street ADAA Art Show in New York City.

20.     Durazzo's obligation to pay Benrimon before the Art Show was a material condition of the parties' agreement. Benrimon bargained for this term to ensure that, if Durazzo failed to make prompt payment, Benrimon could attempt to find another buyer for the Work at the Art Show.

21.     Durazzo did not pay $347,500 to Benrimon before March 1, 2017.

22.     Nevertheless, on March 5, 2017, Durazzo asked Benrimon for reprieve, explaining that the funds would be in his account within one or two days and that he would immediately wire the money to Benrimon. Durazzo followed up with an email the next day, March 6, stating that he had the funds in his account and would promptly wire the money to Benrimon.

23.     As a result of Durazzo's representations, Benrimon attempted to work with Durazzo in good faith to complete the transaction, despite Durazzo's breach. Yet Durazzo still delayed. On March 7 at 8:55am, Durazzo represented to Benrimon that the money had been wired to Benrimon's account. But the money still had not arrived by the end of the morning on March 7. Benrimon therefore called Durazzo on March 7 to explain that Durazzo had already

breached the parties' agreement, that Durazzo's money had still not arrived several hours after he said he wired it, and that Benrimon was cancelling the parties' deal pursuant to the original terms if the money did not arrive by the end of the day on March 7.

24. Benrimon did not receive payment from Durazzo on March 7.

25. On March 8, Durazzo sent Benrimon a wire confirmation that was inconsistent with Durazzo's representations to Benrimon. Specifically, the wire confirmation was dated March 8 and said the wire would be settled on March 10, which was inconsistent with Durazzo's statement that he wired the funds to Benrimon on March 7.

26. Durazzo knew he had paid Benrimon late, because he emailed Benrimon on March 8 saying that he "would like to have a quick chat to make certain we have an agreement please."

27. Benrimon responded to Durazzo by informing him that they did not, in fact, have an agreement to complete the sale, because the transaction was cancelled by its terms. Benrimon also sent Durazzo a voided invoice.

28. All relevant aspects of the transaction occurred in New York.

29. Benrimon is a New York company.

30. Benrimon's physical art gallery is located in New York.

31. Benrimon stores the Work in New York.

32. Durazzo viewed the Work in New York before agreeing to purchase the Work.

33. Benrimon and Durazzo entered into the contract regarding the Work in New York.

34. Benrimon sent the invoice to Durazzo from New York on Benrimon's New York letterhead.

35. The invoice requires that Durazzo send payment for the Work to Benrimon's New York bank account.

36. Potential witnesses regarding the transaction live in New York.

37. Benrimon has no contacts with Paris.

38. Benrimon does not have an art gallery or any other business presence in Paris.

39. Benrimon does not own property in Paris.

40. Benrimon is not a French resident.

41. On July 3, 2017, Benrimon received a copy of a Writ of Summons to appear before the Paris Commercial Court. Durazzo's lawsuit against Benrimon in the Paris Commercial Court alleges breach of contract and seeks damages against Benrimon.

42. Litigating the Paris Action would be extremely time-consuming, expensive, and inconvenient to Benrimon.

43. After Durazzo breached the parties' agreement by paying Benrimon later than March 1, 2017, Durazzo intentionally interfered with Benrimon's effort to sell the Work. For example, Benrimon had the opportunity to sell the Work through another New York art gallery in the summer of 2017. Durazzo learned about this opportunity and falsely informed the art gallery that he owned the Work. As a result of Durazzo's misrepresentation, the art gallery refused to acquire the Work from Benrimon.

### COUNT I: DECLARATORY JUDGMENT (28 U.S.C. § 2201)

44. Benrimon repeats and incorporates the allegations above, as if fully set forth herein.

45. The parties entered into an agreement regarding the Work on February 21, 2017.

46. A material condition of the transaction was that Durazzo would pay Benrimon for the Work before March 1, 2017.

47. Durazzo did not pay $347,500 to Benrimon before March 1, 2017.

48. The parties' transaction was cancelled because Durazzo did not pay $347,500 to Benrimon before March 1, 2017.

49. Nor did Durazzo pay Benrimon during the brief cure period Benrimon and Durazzo discussed between March 1 and March 7, 2017, which Benrimon entertained solely as a result of Durazzo's misrepresentations.

50. Benrimon owned and possessed the Work before the parties' transaction and continues to own and hold the right to possess the Work, because the parties' transaction was cancelled consistent with the terms of the parties' February 21, 2017 agreement.

51. Durazzo has no right to possess the Work, because the transaction was cancelled by Durazzo's failure to satisfy a material condition of the transaction.

52. Durazzo has demanded that Benrimon deliver the Work.

53. Benrimon has refused to relinquish the Work.

54. Durazzo subsequently filed a lawsuit against Benrimon in the Paris Commercial Court for breach of contract.

55. For the above reasons, an actual and justiciable controversy exists between Benrimon and Durazzo. Benrimon is entitled to a declaratory judgment that Benrimon did not breach the parties' contract.

## COUNT II: ANTI-SUIT INJUNCTION

56. Benrimon repeats and incorporates the allegations above, as if fully set forth herein.

57. A court may issue an anti-suit injunction enjoining a party from litigating a foreign action provided "two threshold requirements are met: first, the parties must be the same in both proceedings, and second, resolution of the case before the enjoining court must be dispositive of the action to be enjoined." *Eastman Kodak Co. v. Asia Optical Co.*, 118 F. Supp. 3d 581, 586 (S.D.N.Y. 2015) (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987) and *Paramedics Electromedicina Commercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004)).

58. The parties are the same in this action and the Paris Action.

59. Resolution of the case before this Court would be dispositive of the Paris Action because this action raises the same issue as the Paris Action: whether Benrimon breached the parties' contract regarding the Work.

60. In addition to the two threshold conditions, courts must also "weigh five additional factors: (1) the threat to the enjoining court's jurisdiction posed by the foreign action; (2) the potential frustration of strong public policies in the enjoining forum; (3) the vexatiousness of the foreign litigation; (4) the possibility of delay, inconvenience, expense, inconsistency, or a race to judgment; and (5) other equitable considerations." *Eastman Kodak Co.*, 118 F. Supp. 3d at 586 (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119-20 (2d Cir. 2007)).

61. The Paris Action frustrates New York's policy interest in having the laws of New York interpreted by a New York court, because the agreement regarding the Work was reached in New York and is governed by New York law.

62. The Paris Action is vexatious because it is a parallel proceeding that will likely result in a race to the judgment and unnecessary expense, Paris has no connection with the underlying facts, and Benrimon has no connection to Paris.

63. The Paris Action will inconvenience and impose unreasonable expense on Benrimon. Benrimon is a New York company, Benrimon's principal place of business is in New York, the Work is located in New York, Durazzo viewed the Work in New York, the parties entered into the contract in New York, Benrimon sent the invoice regarding the Work from New York, the invoice requires that payment be sent to Benrimon's New York bank account, potential witnesses live in New York, and legal issues concerning the parties' contract will require application of New York law.

64. Equitable considerations favor the issuance of an anti-suit injunction because Durazzo has engaged in forum shopping. Paris has no connection to the underlying facts, and Durazzo is using the Paris Action to seek remedies it cannot not obtain in a U.S. action, including an order that its monetary demand be "provisionally enforceable" before the issuance of any judgment.

**COUNT III: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

65. Benrimon repeats and incorporates the allegations above, as if fully set forth herein.

66. Durazzo knew that Benrimon had a specific opportunity to sell the Work to another New York art gallery.

67. Durazzo misrepresented to that New York art gallery that he owned the Work in an intentional effort to prevent Benrimon from selling the Work and to harm Benrimon for lawfully cancelling the parties' transaction.

68. Durazzo's statement to the gallery that he owned the work was false, because Benrimon owns the Work.

69. Durazzo's statement to the gallery that he owned the Work was also defamatory of Benrimon's business and reputation, because it implied that Benrimon was attempting to sell a Work it did not own.

70. As a proximate result of Durazzo's misrepresentation, the New York art gallery declined to acquire the Work from Benrimon.

71. Benrimon suffered damages as a result of the New York art gallery's refusal to purchase the Work.

## DEMAND FOR JURY TRIAL

Benrimon demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure with respect to all issues in this case that are triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Benrimon demands judgment as follows:

A. Declaring that Benrimon did not breach the parties' contract;

B. Preliminarily and permanently enjoining Durazzo from litigating the Paris Action;

C. Awarding Benrimon compensatory damages as a result of Durazzo's tortious conduct, in an amount to be proven at trial;

D. Awarding Benrimon punitive damages as a result of Durazzo's tortious conduct, in an amount to be proven at trial;

E. Awarding Benrimon the cost of suit as incurred in this action and attorneys' fees; and

F. Awarding Benrimon all other relief as may be appropriate.

Dated: August 22, 2017
      New York, New York

                                         **BOIES SCHILLER FLEXNER LLP**

                                         By:    <u>*/s/ Luke Nikas*</u>

                                                  Luke Nikas
                                                  575 Lexington Avenue
                                                  New York, New York 10022
                                                  Telephone: (212) 446-2300
                                                  Facsimile: (212) 446-2350
                                                  E-mail: lnikas@bsfllp.com

                                                  *Attorneys for Plaintiff David*
                                                  *Benrimon Fine Art LLC*