USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/26/2017

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
DAVID BENRIMON FINE ART LLC,   :
                               :
              Plaintiff,       :
                               :
    -against-                  :   No. 17 Civ. 6382 (JFK)
                               :   OPINION & ORDER
RAPHAEL DURAZZO and TORRELIONE :
SAS,                           :
                               :
              Defendants.      :
------------------------------ X
```

APPEARANCES

FOR PLAINTIFF DAVID BENRIMON FINE ART LLC:
    Nathan Andrew Holcomb, Esq.
    Luke William Nikas, Esq.
    BOIES, SCHILLER & FLEXNER LLP

FOR DEFENDANTS RAPHAEL DURAZZO and TORRELIONE SAS:
    Giorgio Adib Sassine, Esq.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Plaintiff David Benrimon Fine Art LLC's ("Plaintiff") motion for a preliminary anti-suit injunction to enjoin a suit between Defendant Torrelione SAS ("Torrelione") and Plaintiff in Paris Commercial Court. For the reasons discussed below, Plaintiff's motion is denied.

## I. Background

Unless otherwise noted, the following facts are drawn from the amended complaint. Plaintiff is a New York limited liability company located at 730 Fifth Avenue, New York, NY 10019. (Am. Compl. ¶ 13.) Defendant Raphael Durazzo ("Durazzo")

1

is a citizen of France and the chairperson of Torrelione. (Id. ¶ 14.) Torrelione is a single-shareholder limited liability company with a registered office at 7 Rue Boileau, 75016 Paris, France. (Id. ¶ 15.)

This action involves a dispute over a painting by Josef Albers, titled Study for Homage to the Square: Soft Pulse, dated 1962 (the "Painting"). (Id. ¶ 1.) On February 21, 2017, Plaintiff and Durazzo agreed that Plaintiff would transfer the Painting to Durazzo in exchange for payment of $347,500. (Id. ¶ 3.) Plaintiff claims that the parties agreed that the transaction would be cancelled if Durazzo failed to pay Plaintiff before March 1, 2017. (Id. ¶ 19.) On February 21, 2017, Plaintiff sent Torrelione an invoice for the Painting. (Durazzo Decl. Ex. 1 at 9.) The only terms provided in the invoice were the purchase price and that the payment would be made by wire transfer to Plaintiff's JP Morgan Chase bank account in the United States. (See id.) No provisions were included regarding the payment due date, forum selection, or choice of law that governed the parties' agreement. (See id.)

Durazzo did not pay $347,500 to Plaintiff before March 1, 2017. (Am. Compl. ¶ 21.) Nevertheless, on March 5, 2017, Durazzo asked Plaintiff for reprieve, explaining that the funds would be in his account within one or two days and he would immediately wire the money to Plaintiff at that time. (Id. ¶

22.) On March 7 at 8:55 A.M., Durazzo represented to Plaintiff that the money had been wired to Plaintiff's account. (Id. ¶ 23.) By the end of the morning on March 7, the money still had not arrived. (Id.) Plaintiff called Durazzo on March 7 to explain that Durazzo had breached the parties' agreement and that Plaintiff was cancelling the parties' deal pursuant to the original terms if the money did not arrive by the end of day on March 7. (Id.) On March 8, Durazzo sent Plaintiff a wire confirmation stating the wire would be settled on March 10, which was inconsistent with Durazzo's statement that he wired the funds to Benrimon on March 7. (Id. ¶ 25.) Despite Torrelione's wire transfer of the full payment amount, (Defs.' Counterclaims ¶ 27), Plaintiff informed Durazzo that they did not have an agreement to complete the sale and sent Durazzo a voided invoice. (Id. ¶ 27.)

On July 3, 2017, Plaintiff received a copy of a Writ of Summons to appear before the Paris Commercial Court (the "Paris Action"). (Id. ¶ 41.) Torrelione's lawsuit in Paris alleges breach of contract and seeks damages against Plaintiff. (Id.) Durazzo is not a party to the Paris Action. (Pl.'s Mem. of L. in Supp. of Order to Show Cause at 5.) On August 22, 2017,

3

Plaintiff filed an amended complaint[1] with this Court seeking a declaratory judgment that Plaintiff did not breach the parties' contract and an anti-suit injunction enjoining Durazzo's suit in Paris, and included a claim for tortious interference with prospective economic advantage against Torrelione and Durazzo (together, "Defendants"). On September 28, 2017, the Court issued an order to show cause as to why an order for a preliminary anti-suit injunction should not be issued. (See Order to Show Cause, ECF No. 14 (filed Sept. 29, 2017).) The Court heard arguments on October 24, 2017.

## II. Discussion

### 1. Legal Standard

A district court may enjoin a party from pursuing litigation in a foreign jurisdiction. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). While parallel actions are ordinarily permitted, "an anti-suit injunction may be appropriate when used to protect the jurisdiction and judgment of the enjoining court." Eastman Kodak Co. v. Asia Optical Co., 118 F. Supp. 3d 581, 586 (S.D.N.Y. 2015). However, "principles of comity counsel that injunctions restraining foreign litigation be used

---

[1] On the same day, Plaintiff filed the original complaint and a seemingly-identical amended complaint that includes a demand for jury trial.

4

sparingly and granted only with care and great restraint." Paramedics, 368 F.3d at 652 (internal quotations and citation omitted).

The Court may enjoin a party from pursuing a foreign action provided "two threshold requirements are met: first, the parties must be the same in both proceedings, and second, resolution of the case before the enjoining court must be dispositive of the action to be enjoined." Eastman Kodak, 118 F. Supp. 3d at 586. If these threshold requirements are met, courts weigh five additional factors identified in China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987): (1) the threat to the enjoining court's jurisdiction posed by the foreign action; (2) the potential frustration of strong public policies in the enjoining forum; (3) the vexatiousness of the foreign litigation; (4) the possibility of delay, inconvenience, expense, inconsistency, or a race to judgment; and (5) other equitable considerations. Id. While a court must consider each of these factors, the first two—whether the foreign action threatens the enjoining forum's jurisdiction or its strong public policies—are given greater weight. Id. at 587. The discretionary factors will tend to weigh in favor of an anti-foreign-suit injunction "that is sought to protect a federal judgment." Id. (citation omitted).

## 2. Analysis

The threshold requirements for an anti-suit injunction are satisfied. To satisfy the first requirement, the parties need not be identical. See Paramedics, 369 F.3d at 652–53. This requirement is met if the parties are "sufficiently similar." See id. at 652. Although Durazzo is not a party to the Paris Action, he is the chairperson of Torrelione and was named in this action on "the basis of [his] corporate relationship with [Torrelione]," thus, "the China Trade 'same party' requirement is satisfied." Stolt Tankers BV v. Allianz Seguros, S.A., No. 11 CIV. 2331 SAS, 2011 WL 2436662, at *5 (S.D.N.Y. June 16, 2011).

Under the second threshold factor, the resolution of the case before this Court must be dispositive of the Paris Action. In determining whether the action before this Court will be dispositive, the Court "must determine the substance of the case before the enjoining court." Eastman Kodak, 118 F. Supp. 3d at 588. The issues in both proceedings are the same, namely whether Plaintiff breached the parties' agreement. Accordingly, the resolution of this action will be dispositive of the Paris Action. Thus, the second threshold requirement is met.

However, the China Trade factors do not weigh in favor of enjoining the Paris Action. First, the Paris Action does not pose a threat to this Court's jurisdiction. Plaintiff argues that the Paris Action is a "parallel proceeding addressing the

same issue before this Court" and the Paris Commercial Court could reach the merits of the claims first, resulting in a judgment with potential res judicata effects. (Pl.'s Mem. at 7.) However, "the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum." China Trade, 837 F.2d at 36; see also Hamilton Bank, N.A. v. Kookmin Bank, 999 F. Supp. 586, 588 (S.D.N.Y. 1998) ("[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously."). A threat to the enjoining court's jurisdiction is greatest when "a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action." Bank Leumi USA v. Ehrlich, No. 12-CV-4423 (AJN), 2015 WL 12591663, at *6 (S.D.N.Y. Sept. 23, 2015) (quoting China Trade, 837 F.2d at 36). The enjoining court's jurisdiction is also threatened "when a foreign suit threatens to undermine [a] federal judgment." Id. (internal quotation marks omitted). Neither of those circumstances applies here. There has been no judgment in this action, and although the Paris Commercial Court may determine the same liability issues before this Court, the Paris Commercial Court "has not attempted to enjoin the proceedings in New York . . . nor . . . sought to prevent the southern

7

district from exercising its jurisdiction over this case." China Trade, 837 F.2d at 37.

Plaintiff also argues that the Paris Action is a threat to this Court's jurisdiction because personal jurisdiction over Plaintiff in the Paris Action is predicated on Article 14 of the French Civil Code, under which the French nationality of the plaintiff is a sufficient ground for jurisdiction. (Pl.'s Reply Mem. at 4.)  Plaintiff contends that this theory of jurisdiction is incompatible with due process in the United States. (Id. at 5.)  Although the Court acknowledges that there is nothing in U.S. law comparable to Article 14, "there is no evidence from which to infer that [Torrelione] filed its suit in [Paris] in an attempt to evade our Constitution's notions of due process." Hamilton Bank, 999 F. Supp. at 589–90 (no evidence that defendant in U.S. action filed its foreign suit to evade due process where defendant filed its foreign action "more than three months before" plaintiff filed U.S. action).  Further, although Plaintiff claims to have no contacts with France, (Benrimon Decl. ¶ 15), Plaintiff contracted with a French company and agreed to transfer the Painting to a French citizen, (Am. Compl. ¶ 3), as part of the parties' agreement.  Thus, it cannot be said that Plaintiff has no ties to France in connection with this action.  If Plaintiff wishes to contest personal jurisdiction in the Paris Action, it can default and

8

resist enforcement of a judgment in New York under N.Y. C.P.L.R. § 5304(a), under which foreign judgments will be recognized only if the foreign court had personal jurisdiction over the defendant.[2] See, e.g., Hamilton Bank, 999 F. Supp. at 589-90 (denying an anti-suit injunction where plaintiff argued that the foreign court did not have personal jurisdiction and noting that the plaintiff could default in the foreign action and contest enforcement of the judgment in U.S. court). "One way or the other, [Plaintiff] would have its day in court on the jurisdictional issue."[3] Id. at 590.

Second, no public policy is frustrated by allowing the Paris Action to continue. Plaintiff argues that there exists a policy interest in having a New York court apply New York law,

---

[2] Plaintiff's counsel suggested at oral argument that Plaintiff may have property in Europe against which a judgment in Paris Commercial Court could be enforced. However, nowhere in Plaintiff's briefs or accompanying declaration does it describe any such property, or the laws of the European nation that would allow the property to be claimed to satisfy a judgment in Paris Commercial Court. The Court will not rely on the hypothetical possibility that Plaintiff owns property in a European country that would recognize a judgment in the Paris Action regardless of whether the Paris Commercial Court has personal jurisdiction over Plaintiff.

[3] At oral argument, Plaintiff's counsel also suggested that Defendants' counterclaims, filed on October 19, 2017, should change the Court's analysis because there is now a "res" at issue. Although Defendants in their answer request—in the alternative to their preferred relief of money damages—specific performance that Plaintiff deliver the Painting to Torrelione, the question under China Trade is whether the Paris Action threatens this Court's jurisdiction. Defendants' counterclaims in this action do not threaten any aspect of this Court's jurisdiction.

9

which Plaintiff contends governs the parties' contract because the transaction concerned the sale of a work held in New York. (Pl.'s Mem. at 7.)  Courts have found a general policy interest in having New York law interpreted by a U.S. court where the parties agreed that New York law would govern their agreement. See Software AG, Inc. v. Consist Software Sols., Inc., No. 08 CIV. 389CMFM, 2008 WL 563449, at *25 (S.D.N.Y. Feb. 21, 2008). However, the parties' agreement does not contain a choice of law provision or a forum selection clause and Plaintiff does not claim that the parties agreed to litigate under New York law. Plaintiff has not established that New York law should govern the parties' agreement.  Thus, there is no potential for frustration of Plaintiff's cited public policy interest.

Third, the Paris Action is not vexatious because it was not brought by Defendants to "undermine this Court's jurisdiction . . . but to enforce the [parties'] [a]greement." C.D.S., Inc. v. Bradley Zetler, CDS, LLC, 213 F. Supp. 3d 620, 629 (S.D.N.Y. 2016).  Defendants brought the action in Paris Commercial Court before Plaintiff filed its action in this Court.  The parties' contract did not contain a forum selection or choice of law clause.  Accordingly, Defendants were within their rights to bring the action in France. See Hamilton Bank, 999 F. Supp. at 590 (finding that there was nothing vexatious about defendant's foreign suit filed before U.S. action where the defendant "quite

understandably . . . sought relief from its own courts" and "[could] not even be accused of having filed a duplicative lawsuit in its quest for a preferred forum").

Finally, the remaining China Trade factors do not weigh in favor of an anti-suit injunction. Allowing the Paris Action—which was filed first—to continue will not cause undue expense and delay, and even if there were a race to judgment, "it is not clear that this favors [Plaintiff], which filed the duplicative action; even assuming that it does, it does not do so sufficiently to overcome the other factors counseling against an injunction." Id. Plaintiff's arguments that equitable considerations, including Defendants' "forum shopping" and the potential for punitive remedies in the amount of €5,000, are similarly unpersuasive.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for an anti-suit injunction is DENIED.

**SO ORDERED.**

Dated:  New York, New York
        October 26, 2017

John F. Keenan
United States District Judge